IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

## STATE OF TENNESSEE v. JEFFREY WAYNE ADKISSON

**Direct Appeal from the Criminal Court for Morgan County**
**No. 8468      E. Eugene Eblen, Trial Judge**

_____

**No.  E1999-01316-CCA-R3-CD - Decided July 10, 2000**

_____

The defendant, convicted of one count of D.U.I., argues that the evidence was insufficient and that a police report submitted as evidence was unfairly redacted.  After review, we find no reversible error and therefore affirm the judgment from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

WILLIAMS, J., delivered the opinion of the court, in which WOODALL and GLENN, JJ., joined.

James W. Brooks, Jr., Wartburg, Tennessee, for the appellant, Jeffrey Wayne Adkisson.

Paul G. Summers, Attorney General & Reporter, Elizabeth B. Marney, Assistant Attorney General, J. Scott McCluen, District Attorney General, and D. Roger Delp and Frank Harvey, Assistant District Attorneys, for the appellee, State of Tennessee.

## OPINION

### Introduction

The defendant, Jeffrey Wayne Adkisson, appeals from a Morgan County jury verdict convicting him of one count of D.U.I.  For this offense, he was sentenced to eleven months and twenty-nine days with four days to serve and a $400 fine.  On appeal, he argues that:
(1) The evidence was insufficient; and
(2) certain evidence, submitted to the jury, was unfairly redacted.
After careful review, we find no reversible error and therefore affirm the judgment from the trial court.

### Facts

In our sufficiency analysis, we provide a detailed account of the relevant facts, evidence and

testimony. Here, we provide only an outline. On August 9, 1997, Deputy McPeters, then of the Morgan County Sheriff's Office, stopped the defendant after having observed him driving erratically. The Deputy administered several field sobriety tests that the defendant failed.[1] The defendant was then arrested and charged with D.U.I. At a jury trial, where Deputy McPeters was the lone witness, the defendant was found guilty. From that judgment, the defendant now appeals.

## Analysis

### *Sufficiency of the Evidence*

First, the defendant challenges the sufficiency of the evidence. Specifically, he argues that the arresting officer's failure to remember on direct examination that he administered a "one-leg-stand" test rather than a "walk-and-turn" test renders the evidence insufficient and compromises the jury's verdict. We disagree.

We address the defendant's sufficiency of the evidence question under our well-established standard of review. When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." See Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this Court neither reweighs nor reevaluates the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. See Liakas v. State, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the party prevailing at trial the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. See State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of facts, not this Court. See Id. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Because a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

At trial, Deputy McPeters was the lone witness. He testified that while driving west on Highway 62 in Morgan County, a truck driven by the defendant crossed over the center lane into the lane where he was driving. He swerved, avoided a wreck, and then began pursuit. He was uncertain

---

[1]A blood-alcohol test was also administered but the results were suppressed.

how long it took him to catch the defendant, who was driving erratically and speeding, but he estimated that it took "a couple of minutes." After he had stopped the defendant, he smelled alcohol about his person and asked the defendant whether he had been drinking. The defendant admitted that he had been drinking. He then asked the defendant to step out of the car, at which time he noticed that the defendant's eyes were "red" and his movements were unstable. At that point, Deputy McPeters administered several field sobriety tests. He first asked the defendant whether he knew the alphabet and to recite it. The defendant performed poorly. Next, he asked the defendant to touch his finger to his nose, and the defendant again performed poorly. Finally, he testified, on direct examination, that he asked the defendant to do a "walk-and-turn" test and that the defendant performed poorly. However, as regards this final test, defense counsel, on cross-examination, impeached McPeters's testimony with his own police report and elicited admission that, in fact, a "one-leg stand" test had been administered instead of a "walk-and-turn." All in all, however, the Deputy continued to describe the defendant's intoxication as "severe."

Reviewing this evidence, the defendant identifies several problems, all generally relating to the testimony of McPeters. First, he points out that McPeters was a relatively new officer with little formal training. Second, he infers that the Deputy's testimony is not credible, given that cross-examination revealed that his direct testimony was in error and that he had not, in fact, performed the "walk-and-turn" test. Second, he argues that the "alphabet" test, not approved by the National Highway Traffic Safety Administration, is not a reliable indication of intoxication. And finally, he points out an apparent factual inconsistency in the Deputy's testimony: McPeters stated that it took him several minutes to catch the defendant and the defendant was speeding, yet the total distance traveled was only two miles.

On sufficiency review, we do not sit to reweigh the credibility of witnesses. See Tuttle, 914 S.W.2d 932. That is, far removed from the actual testimony of Deputy McPeters, this Court will not now, in the face of a jury verdict, conclude that his recollection of the incident was "poor," that his testimony was "not credible," and that the judgment was therefore in error. Our review, while focusing upon the evidence and testimony presented, is more limited.

We examine the Deputy's testimony that from a certain perspective with a certain question in mind: Taking his testimony, credited by the jury, as true, did it along with any other evidence presented provide sufficient basis for a conviction of D.U.I.? Therefore, at no time will we, noting the factual inconsistences or relative uncertainty and contradiction in his testimony, conclude that he was generally "unbelievable." The jury has already found his testimony believable, and the time for credibility challenges founded on such things is now well past.

Therefore, we begin with Tenn. Code Ann. § 55-10-401 which provides:

**55-10-401. Driving under the influence of intoxicant, drug or drug producing stimulant prohibited – Alcohol concentration in blood or breath. –**
> (a) It is unlawful for any person to drive or to be in physical control of any
>     automobile or other motor driven vehicle on any of the public roads and

highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system[.]

We begin also by noting that no blood-alcohol test is necessary for conviction. See State v. Gilbert, 751 S.W.2d 454, 459 (Tenn. Crim. App. 1988). In this case, no blood-alcohol test was before the jury; however, the deputy testified that he observed the defendant driving erratically, that he smelled alcohol about the defendant's person, that the defendant admitted to drinking, that the defendant failed the "finger-to-nose sobriety" test, that the defendant failed the "alphabet" test, and that the defendant failed the "one-leg-stand sobriety" test.[2] This evidence provides sufficient basis for a conviction of D.U.I. in accordance with Tenn. Code Ann. § 55-10-409, as recited above.

### *Unfair Redaction*

At trial, a police report was submitted to the jury. This report was entered properly; however, certain portions of the report had to be, in fairness to the defendant, redacted. Specifically, notations on the paper indicating the blood-alcohol level of the defendant had to be obscured, because that evidence was suppressed. These notations were obscured, but in a manner that defense counsel now complains was insufficient and unfair. After review, we disagree for several reasons.

At trial, the deputy's police report of the incident was introduced. There was no objection to its introduction; however, defense counsel did point out that the report contained a reference to the defendant's blood-alcohol level and, therefore, had to be redacted. The court, with the prosecuting attorney, after a sidebar discussion, redacted the statement using liquid paper. The defendant now alleges that this redaction was insufficient for two reasons:
(1) The reference to the blood-alcohol level is still legible; and
(2) the manner of redaction draws attention and suspicion.
Therefore, he assigns prejudicial error to its introduction.

First, the redacted reference is not legible. The trial court's manner of redaction was sufficient. Second, the redacted portion is not suspicious or even overly conspicuous. Rather than being in a line entitled "blood-alcohol level," the redacted portion appears just above the defendant's name. There is nothing to suggest that the redacted portion contains any information relevant to the defendant's blood-alcohol level. Third, while the defendant objects to the manner of redaction at one point in the trial, it appears from the record that he later acquiesces and approves of the manner of redaction.

Mr. Brooks:  Your Honor, please, I don't want to belabor the point, and if the court is satisfied after looking at what General Delp has done, that's okay. I think it still points to it.

---

[2] Obviously, we do not credit the Deputy's testimony about the walk and turn sobriety test.

The Court:     No, that's fine.
Mr. Brooks:     Very well.

Therefore, we find no error in its introduction and find that the jury's verdict has not been compromised.[3]

## Conclusion

For these reasons, the judgment from the trial court is affirmed.

---

[3] Even if we had found error, it appears to this Court in light of all the evidence submitted that such error would have been harmless.